743 S.E.2d 778

**SHIRLEY'S IRON WORKS, INC., and
Tindall Corporation, Respondents,**

v.

**CITY OF UNION, South Carolina, Gilbert Group
LLC and William E. Gilbert, Defendants,**

**Of whom, City of Union, South Carolina is Petitioner.**

Appellate Case No. 2010–170066.

No. 27256.

Supreme Court of South Carolina.

Heard March 6, 2013.
Decided May 29, 2013.

562

William E. Whitney, Jr., of Whitney Law Firm, of Union, and Andrew F. Lindemann, of Davidson & Lindemann, PA, of Columbia, for Petitioner.

Boyd B. Nicholson, Jr., of Haynsworth Sinkler Boyd, PA, of Greenville, and Norman W. Lambert and Raymond P. Smith, both of Harper Lambert & Brown, P.A., of Greenville, for Respondents.

Justice KITTREDGE.

This case concerns the interplay between the Subcontractors' and Suppliers' Payment Protection Act (SPPA)[1], the Tort Claims Act (TCA)[2], and this Court's opinion in *Sloan Construction Co. v. Southco Grassing, Inc. (Sloan I)*, 377 S.C. 108, 659 S.E.2d 158 (2008). When subcontractors Shirley's Iron Works, Inc. and Tindall Corporation (collectively Respondents) did not receive full payment from the general contractor Gilbert Group, LLC (Gilbert) for their work on a public construction project for the City of Union (the City), they filed suit, asserting the City failed to comply with the statutory bond requirements pertaining to contractors working with subcontractors on public projects found in the SPPA. The circuit court granted summary judgment to the City. The court of appeals reversed and remanded. *Shirley's Iron Works, Inc. v. City of Union*, 397 S.C. 584, 726 S.E.2d 208 (Ct.App.2009). We granted a writ of certiorari to review the court of appeals decision. We now affirm in part, reverse in part, and remand. Further, we clarify *Sloan I* and hold that a governmental entity may be liable to a subcontractor only for breach of contract for failing to comply with the SPPA bonding requirements.

## I.

In 2002, the City issued a request for proposals for the design and construction of a spec building. Thereafter, the City contracted with Gilbert for the project, the cost of which totaled approximately $875,000. Gilbert entered into contractual agreements with various subcontractors, including Respondents. The City did not require Gilbert to secure a payment bond, and it is undisputed no payment bond was secured. Ultimately, Gilbert failed to fully compensate all of the subcontractors after they completed work on the project.

At the project's completion, the City contended it owed $111,270 on its contract with Gilbert. Respondents also had significant unpaid invoices.[3] After the City was notified of

---

1. S.C.Code Ann. §§ 29-6-210 -290 (Supp.2012).

2. S.C.Code Ann. §§ 15-78-10 -220 (Supp.2012).

3. Respondent Shirley's Iron Works had unpaid invoices in the amount of $132,782. Respondent Tindall Corporation had unpaid invoices in the amount of $165,500.

Gilbert's failure to pay its subcontractors,[4] the City offered to distribute the balance of its contract with Gilbert to the unpaid subcontractors in exchange for a release of the City's liability. The City offered each Respondent $25,000. Upon Respondents' refusal to accept the offer and execute a release in favor of the City, the City distributed their pro rata portions to the other unpaid subcontractors.

In 2003, Respondents filed a Complaint against the City, alleging the City should be required to pay the amounts owed under their respective subcontracts because the City failed to require Gilbert to secure a payment bond in violation of S.C.Code Ann. section 29-6-250.[5] Respondents also requested attorney's fees pursuant to S.C.Code Ann. section 15-77-300 (Supp.2012).[6] The City filed an answer denying Respondents' allegations. The City also filed a third-party complaint against Gilbert, alleging Gilbert was negligent in failing to acquire a payment bond.

In 2004, Judge Paul Short granted the City's motion to strike Respondents' request for attorney's fees.[7] No appeal was taken from the order granting the motion to strike.

In August 2005, Respondents filed an Amended Complaint against the City and Gilbert, asserting third-party beneficiary status of the contract between the City and Gilbert, alleging

---

4. A City administrator testified that the $111,270 was the balance owed as of the project's completion. However, he could not remember the date upon which the City learned of Gilbert's nonpayment, but stated it was while the project was still under construction.

5. Section 29-6-250(1) provides that when a governmental entity is a party to a contract to improve real property, and the contract is for a sum in excess of $50,000, the property owner must require the general contractor to provide a payment bond in the full amount of the contract.

6. Section 15-77-300(A) states that in any civil case contesting state action, the prevailing party may recover reasonable attorney's fees if the governmental agency acted without substantial justification in pressing its claim against the party, and there are no special circumstances that would make the award of attorney's fees unjust.

7. Judge Short also granted the City's motion to join Gilbert as a defendant, finding Gilbert and the City were "joint tortfeasors whose alleged acts combined and concurred to cause the harm for which [Respondents] seek to recover."

Gilbert failed to pay Respondents for their work, and contending the City failed to require Gilbert to secure a payment bond in violation of the SPPA. This Amended Complaint was considerably more detailed than the original complaint. In the "Facts" section, Respondents contended section 29–6–250(1) created an obligation on the City to ensure that a payment bond is in place to protect subcontractors and is a term of the City's contract with Gilbert. Respondents asserted they were third-party beneficiaries of the City's contract with Gilbert because the bonding requirements of section 29–6–250 serve to protect Respondents as subcontractors and are "legislatively mandated contractual obligations" incorporated into the contract as a matter of law. Respondents argued they were damaged by the City's breach of its statutorily imposed contractual obligation to secure a payment bond from Gilbert. Respondents asserted causes of action for (1) "[v]iolation of S.C.Code Ann. [section] 29–6–250," (2) attorney's fees for violation of S.C.Code Ann. section 27–1–15, (3) negligence, (4) quantum meruit, and (5) attorney's fees and prejudgment interest.

Thereafter, Judge Steven John granted the City's motion to strike Respondents' claims for attorney's fees and prejudgment interest. Judge John noted that Judge Short's previous order stated Respondents' original complaint sounded in tort, and that attorney's fees and prejudgment interest were not available under the TCA. Judge John held that Judge Short's unappealed order "constitute[d] the law of the case," which he was "bound to apply."

Subsequently, both parties moved for summary judgment. Judge John Few granted the City's motion for summary judgment on all of Respondents' causes of action and denied Respondents' motion. Judge Few found Respondents' claims sounded in tort and were barred by the TCA. Additionally, Judge Few held that a governmental entity's violation of the SPPA does not give rise to a private cause of action by a subcontractor.[8] Respondents appealed, and the court of appeals reversed and remanded.

---

8. Judge Few's order was based, in part, on the court of appeals decision in the *Sloan I* litigation. *See Sloan Constr. Co. v. Southco Grassing, Inc.*, 368 S.C. 523, 629 S.E.2d 372 (Ct.App.2006). However, Judge Few

Specifically, the court of appeals reversed Judge Few's findings with respect to Respondents' negligence claim, holding that the SPPA provided for a tort cause of action which was not governed by the TCA. The court reasoned that *Sloan I* supported its conclusion. Additionally, the court of appeals held Judge John's and Judge Short's previous orders stating Respondents' claims sounded in tort were not the law of the case and Respondents' Amended Complaint, when read as a whole, sufficiently pled a third-party beneficiary breach of contract cause of action for violation of the SPPA. Concluding a ruling on the merits would be premature, the court of appeals remanded to the circuit court for findings regarding Respondents' tort, breach of contract, and quantum meruit claims to determine liability and damages.[9] This court granted the City's writ of certiorari to review the court of appeals opinion.

## II.

In reviewing a grant of summary judgment, the appellate court applies the same standard as the trial judge under Rule 56(c), SCRCP. *Bovain v. Canal Ins.*, 383 S.C. 100, 105, 678 S.E.2d 422, 424 (2009). Summary judgment is proper if, viewing the evidence in a light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Id.*

## III.

### A.

With the enactment of the TCA in 1986, the legislature intended to remove the common law bar of sovereign immunity in certain circumstances, but only to the extent legislatively authorized. *See* S.C.Code Ann. § 15–78–20 (declaring it is the public policy of the state that government entities are only

---

issued his summary judgment order prior to our opinion in *Sloan I*, which reversed the court of appeals.

9. The court of appeals also found Respondents' claim for attorney's fees under section 27–1–15 of the South Carolina Code was not preserved for review and Respondents have not appealed this ruling.

liable for torts within the limitations of this chapter). However-
er, the TCA expressly delineated many exceptions to the
waiver of immunity, including that the governmental entity is
not liable for loss resulting from failure to enforce any law or
statute. *See id.* § 15–78–60(4).

Thereafter, in 2000, the legislature enacted the SPPA. The
SPPA reads in pertinent part as follows:

> (1) When a governmental body is a party to a *contract* to
> improve real property, and the *contract* is for a sum in
> excess of fifty thousand dollars, the owner of the property
> shall require the contractor to provide a labor and material
> payment bond in the full amount of the *contract*. . . .
>
> . . . .
>
> (3) For purposes of any *contract covered by the provisions
> of this section,* it is the duty of the entity *contracting* for the
> improvement to take reasonable steps to assure that the
> appropriate payment bond is issued and is in proper form.

S.C.Code Ann. § 29–6–250 (emphasis added).

It is the interplay of these two statutory schemes which is
implicated in the present case. Both parties rely on *Sloan I*
to advance their respective positions.

In *Sloan I,* this Court addressed whether a subcontractor
may bring a private right of action against a governmental
entity for failure to comply with the statutory bonding re-
quirements of the SPPA. A subcontractor working on a state
highway maintenance project brought claims against the De-
partment of Transportation (SCDOT) for its alleged failure to
comply with the bonding requirements of the SPPA. The
subcontractor brought an action for negligence against
SCDOT pursuant to the TCA and a breach of contract claim
alleging SCDOT was obligated to it, as a third-party beneficia-
ry to the contract between SCDOT and the contractor, to
ensure that the contractor was properly bonded pursuant to
the SPPA.

We held the SPPA is specifically applicable to subcontrac-
tors and suppliers on government projects and outlines a
detailed bonding scheme that significantly expands the protec-
tions already afforded these parties. *Sloan I,* 377 S.C. at 114,
659 S.E.2d at 161. However, the Court noted the SPPA does

not expressly provide for a private right of action between the subcontractor and the contracting government body. *Id.* at 114, 659 S.E.2d at 162. Nevertheless, the Court reasoned the "very title of the SPPA clearly indicates the [legislature] intended to provide stronger payment protection specifically for subcontractors and suppliers on government projects." After an analysis of the terms of the SPPA, we held "the legislature must have intended for those to whom the government owed the duty to be able to vindicate their rights under a statute enacted for their special benefit." *Id.* (noting "the SPPA is framed solely in the context of payment security by virtue of its location in Chapter 6, Title 26, entitled 'Payments to Contractors, Subcontractors, and Suppliers' "). Thus, we found "an implied private right of action by a subcontractor against the government exists under the SPPA." [10]

Specifically addressing the third-party beneficiary claim, the Court relied on the reasoning of the Seventh Circuit Court of Appeals in *A.E.I. Music Network, Inc. v. Bus. Computers, Inc.*, 290 F.3d 952 (7th Cir.2002). In *A.E.I.*, the Seventh Circuit explained that the statutory bond requirement, which is similar to this state's, was a contractual term incorporated by the legislature. In creating the bond requirement, the Seventh Circuit reasoned the legislature intended public works construction contracts to protect subcontractors. *A.E.I.*, 290 F.3d at 955. Thus, the *A.E.I.* court held the subcontractor's claim as a third-party beneficiary sounded in common law as a claim for breach of contract. *Id.* at 957.

We found *A.E.I.*'s analysis persuasive and stated:

Because the legislature intended to protect contractors by creating bonding requirements, and because the subcontractors are the only ones with a financial stake in enforcing the bond requirements, subcontractors are direct third-party beneficiaries to the contract between a government entity

---

**10.** In 2011, after a second appeal in the *Sloan* litigation, this Court modified its holding from *Sloan I. See Sloan Constr. Co. v. Southco Grassing, Inc. (Sloan II)*, 395 S.C. 164, 717 S.E.2d 603 (2011). In *Sloan II*, we held that the governmental entity did not owe a continuing duty to maintain the payment bond throughout the course of the project. However, because Respondents allege that the City failed to ensure that a payment bond was procured in the first instance, *Sloan II's* holding does not impact this case.

and a general contractor to which the SPPA is applicable. *For this reason, the government may be liable to a subcontractor for breach of contract for failing to comply with the SPPA bonding requirements.*

*Sloan I*, 377 S.C. at 120, 659 S.E.2d at 165 (emphasis added).

The *Sloan I* Court did not address the subcontractor's negligence claim in the body of the opinion. However, in footnote five, which is the source of the apparent confusion in the current appeal, the Court stated:

Although we find that the court of appeals incorrectly based its conclusion with respect to the SPPA on this issue on federal Miller Act jurisprudence, *we nevertheless agree that a claim for failure to enforce the bonding requirements of the SPPA is not properly brought pursuant to the Tort Claims Act because the Act does not act as a waiver of sovereign immunity when a governmental entity fails to enforce a statute.* See S.C.Code Ann. § 15–78–60(4) (2005). *See also Hawkins v. City of Greenville*, 358 S.C. 280, 292–93, 594 S.E.2d 557, 563–64 (Ct.App.2004) (noting that the South Carolina Tort Claims Act is only a limited waiver of sovereign immunity for tort claims against government entities and does not create new substantive causes of action). *Therefore, the Tort Claims Act is not relevant to the government's liability for failure to comply with a duty under the SPPA.*

*Id.* at 118, 659 S.E.2d at 164, n. 5 (emphasis added).

We find footnote five is clear and presents no ambiguity. The TCA forecloses a tort action under the SPPA. Indeed, this Court must presume the legislature knew of and contemplated the TCA in enacting the SPPA. *See State v. McKnight*, 352 S.C. 635, 648, 576 S.E.2d 168, 175 (2003) ("There is a presumption that the legislature has knowledge of previous legislation as well as of judicial decisions construing that legislation when later statutes are enacted concerning related subjects."). The TCA is the sole and exclusive remedy for tort actions against the government. *See* S.C.Code Ann. § 15–78–200 ("Notwithstanding any other provisions of law, [the TCA] is the exclusive and sole remedy for any tort committed by an employee of a governmental entity while acting within the scope of the employee's official duty."). And, subsection (4) of section 15–

78–60 makes clear that the government is not liable in tort for its failure to enforce a statute. *See also Proctor v. Dep't of Health & Envtl. Control,* 368 S.C. 279, 290, 628 S.E.2d 496, 502 (Ct.App.2006) ("The [TCA] governs all tort claims against governmental entities and is the exclusive civil remedy available in an action against a governmental entity or its employees." (quoting *Parker v. Spartanburg Sanitary Sewer Dist.,* 362 S.C. 276, 280, 607 S.E.2d 711, 714 (Ct.App.2005))). Footnote five in *Sloan I* reinforces these provisions and plainly excludes a tort action under the SPPA.

Finally, after expressly stating that "the government may be liable to a subcontractor *for breach of contract* for failing to comply with the SPPA bonding requirements[,]" we addressed the extent of governmental liability under the SPPA. *Sloan I,* 377 S.C. at 120, 659 S.E.2d at 165(emphasis added). The Court observed that "in a *tort or a contract* action arising under the SPPA, the government entity's liability is limited to the remaining unpaid balance on the contract with the general contractor when the subcontractor notifies the government of the general contractor's nonpayment." *Id.* at 121, 659 S.E.2d at 165–66 (emphasis added). We believe the superfluous use of the term "tort" here is the reason for the lingering confusion whether a violation of the SPPA will support a tort cause of action.

In this case, the court of appeals found that the Respondents could proceed against the City on a tort cause of action based on our conclusion that "the SPPA establishes both an affirmative duty on the governmental body to require payment bonding, as well as a standard of care for overseeing the issuance of a proper payment bond." The court of appeals held such language "clearly suggested a tort remedy for breach of the duty created pursuant to section 29–6–250 of the SPPA."

## B.

Both parties contend the court of appeals was correct in finding Respondents' cause of action for violation of the SPPA was a tort. The City argues a tort cause of action is governed by, and ultimately barred by, the TCA. Conversely, Respondents contend the court of appeals properly held the

SPPA permits a tort cause of action, notwithstanding the TCA. We reject both contentions, for the SPPA does not permit a private cause of action sounding in tort.

 The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature. *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). "There is a presumption that the legislature has knowledge of previous legislation as well as of judicial decisions construing that legislation when later statutes are enacted concerning related subjects." *McKnight*, 352 S.C. at 648, 576 S.E.2d at 175. "It is presumed that the Legislature is familiar with prior legislation, and that if it intends to repeal existing laws it would . . . expressly do so; hence, if by any fair or liberal construction two acts may be made to harmonize, no court is justified in deciding that the later repealed the first." *Hodges*, 341 S.C. at 88–89, 533 S.E.2d at 583.

We reject the suggestion that the legislature intended to provide a tort remedy under the SPPA. First, the text of the pertinent sections of the SPPA sounds in contract, not tort. *Sloan I* adopted the reasoning of *A.E.I.*, which held the bonding requirement is incorporated into public works construction contracts and a subcontractor's claim sounded in common law as a claim for breach of contract. And this Court's definitive holding in *Sloan I* could not have been clearer: "For this reason, the government may be liable to a subcontractor for breach of contract for failing to comply with the SPPA bonding requirements." *Sloan I*, 377 S.C. at 120, 659 S.E.2d at 165.

Finally, it is true that *Sloan I*, in the section concerning relief, referenced a *"tort or contract* action arising under the SPPA. . . ." However, we now clarify that no tort action arises under the SPPA. Therefore, we reverse the court of appeals with respect to its holding and find that the SPPA does not provide for a tort cause of action against a governmental entity.

## C.

The City next contends the court of appeals erred in reversing the circuit court's grant of summary judgment as to the claim of third-party beneficiary breach of contract. Spe-

cifically, the City contends the law of the case doctrine forecloses a third-party beneficiary claim, and even assuming it does not, Respondents did not sufficiently plead a third-party beneficiary breach of contract action in their Amended Complaint. We disagree and affirm the court of appeals in both respects.

### i.

An unappealed ruling is the law of the case and requires affirmance. *Transp. Ins. Co. & Flagstar Corp. v. S.C. Second Injury Fund,* 389 S.C. 422, 432, 699 S.E.2d 687, 691 (2010). Certainly,

> The doctrine of the law of the case applies to an order or ruling which finally determines a substantial right.... Ordinarily an interlocutory order which merely decides some point or matter essential to the progress of the cause, collateral to the issues in the case, is not binding as the law of the case, and may be reconsidered and corrected by the court before entering a final order on the merits.

*Weil v. Weil,* 299 S.C. 84, 89, 382 S.E.2d 471, 473 (Ct.App. 1989) (quoting 21 C.J.S. Courts Section 195 at 335 (1940)). This State has a long-standing rule that one judge of the same court cannot overrule another. *Charleston Cnty. Dep't of Soc. Servs. v. Father,* 317 S.C. 283, 288, 454 S.E.2d 307, 310 (1995).

We find the orders of Judge John and Judge Short are not the law of the case insofar as the Amended Complaint is concerned. Neither Judge Short nor Judge John specifically ruled on the issue of whether Respondents pled a third-party beneficiary breach of contract claim. Moreover, the City's motions to strike did not require the trial court to determine whether a breach of contract action had been pled.[11] Therefore, we hold the law of the case doctrine does not foreclose Respondents' third-party beneficiary contract claim.

### ii.

"Pleadings are to be liberally construed 'to do substantial justice to all parties.' " *Quality Towing, Inc. v.*

---

11. Furthermore, the two orders merely granted the City's motion to strike with regard to attorney's fees and prejudgment interest pursuant to section 15–7–300 and should not be viewed beyond their intended and limited purpose.

*City of Myrtle Beach,* 340 S.C. 29, 33, 530 S.E.2d 369, 371 (2000) (quoting Rule 8(f), SCRCP). "It is elementary that the principal purpose of pleadings is to inform the pleader's adversary of legal and factual positions which he will be required to meet on trial." *S.C. Nat'l Bank v. Joyner,* 289 S.C. 382, 387, 346 S.E.2d 329, 332 (Ct.App.1986); *see also Langston v. Niles,* 265 S.C. 445, 455, 219 S.E.2d 829, 833 (1975) ("The purpose of pleadings is to place the adversary on notice as to what the issues are.").

We find Respondents' Amended Complaint pled a third-party beneficiary contract claim. In the "Facts" section of the Amended Complaint, Respondents allege they were "third-party beneficiaries" of the City's contract with Gilbert because the bonding requirements are "legislatively mandated contractual obligations" that were incorporated into the contract as a matter of law. The First Cause of Action incorporated the allegations within the "Facts" section and is entitled "Violation of S.C.Code Ann. section 29–6–250." While the word "contract" does not appear in the first cause of action, neither do the words "tort" or "negligence." A fair reading of the Amended Complaint leads to the reasonable conclusion that the first cause of action is one for breach of contract. Moreover, in light of our holding in section B, *infra,* the only claim that can be asserted under section 29–6–250 is a contract claim. Thus, we hold the Amended Complaint sufficiently put the City on notice that Respondents were proceeding on a third-party beneficiary claim theory.

Therefore, we affirm the court of appeals on the issues relating to Respondents' third-party beneficiary breach of contract claim.

### D.

The City also contends the court of appeals erred in reversing summary judgment as to Respondents' quantum meruit claim. We agree. Because there is no dispute as to the existence or validity of the underlying contract at issue, which is fundamentally at odds with the quasi-contractual theory of quantum meruit, we reverse the court of appeals' holding with respect to this claim. *See Sloan I,* 377 S.C. 108, 659 S.E.2d 158 (holding the SPPA's bonding requirements are

incorporated into all public works construction contracts); *Strickland v. Coastal Design Assocs.*, 294 S.C. 421, 424, 365 S.E.2d 226, 228 (Ct.App.1987) ("The law is well settled in this nation that where an express contract has been rescinded or abandoned, one furnishing labor or materials in part perform-ance may recover in quantum meruit *unless the original contract remains in force.*" (emphasis added)). The grant of summary judgment in favor of the City on the quantum meruit claim is reinstated.

## E.

As a final matter, the City contends summary judgment should have been affirmed in any event because it has satisfied its obligation under the SPPA by paying the remaining bal-ance on its contract with Gilbert to several of the unpaid subcontractors. Thus, the City argues no remand is neces-sary. We disagree.

*Sloan I* limits the City's liability to the remaining unpaid balance on the contract with Gilbert at the time the City received notice of Gilbert's nonpayment. 377 S.C. at 120, 659 S.E.2d at 165–66. The record is unclear as to the City's methodology of payment disbursement, and there are genuine issues of material fact regarding the date upon which the City learned of Gilbert's nonpayment, as well as the amount re-maining unpaid at that time. Because factual questions are in dispute, summary resolution would be premature.[12]

## IV.

For the foregoing reasons, the court of appeals is affirmed in part and reversed in part, and this matter is remanded to the circuit court for resolution of the remaining issues consis-tent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

TOAL, C.J., PLEICONES, BEATTY and HEARN, JJ., concur.

---

12. In light of our holdings, remand is limited to liability and damages based only on the surviving third-party beneficiary breach of contract claim.